UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BILLY SMITH**                                             **CASE NO. 2:19-CV-01111**

**VERSUS**                                                **JUDGE JAMES D. CAIN, JR.**

**CHINA MANUFACTURERS ALLIANCE L L C ET AL**     **MAGISTRATE JUDGE LEBLANC**

**MEMORANDUM RULING**

Before the court is a Motion for Summary Judgment [doc. 132] filed by defendant China Manufacturers Alliance, LLC ("CMA"). Plaintiffs oppose the motion. Doc. 154.

**I.
BACKGROUND**

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires, distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG"), under Louisiana Civil Code article 2315 based on their negligent design, manufacture, and distribution of the tires. *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of

diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Smith passed away from sequelae of the head injury giving rise to this suit on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

CMA now moves for summary judgment, asserting that plaintiffs' claims arise under the Louisiana Products Liability Act ("LPLA"), La. R.S. § 9:2800.51 *et seq.*, and that CMA cannot be held liable because it only distributed and imported, rather than manufactured, the Double Coin tires. Doc. 132. Plaintiffs oppose the motion, arguing that (1) CMA exerted sufficient control or influence over the product's design, construction, and quality to be treated as a manufacturer under the LPLA and (2) CMA can be treated as a manufacturer under the LPLA because it is the seller of an alien manufacturer's product and is the alter ego of that manufacturer (SHG). Doc. 154.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). The LPLA is the exclusive remedy in Louisiana for tort claims arising from defective products. La. R.S. § 9:2800.52. It applies only to manufacturers, which are defined to include both "a seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage" and "a seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the

alter ego of the alien manufacturer." *Id.* at §§ 9:2800.53(1)(b), (d). Plaintiffs maintain that CMA may qualify under either prong.

### A. Alter Ego

Under the alter ego prong, CMA maintains that plaintiffs have waived this argument by failing to raise it in their complaint. It is well settled that "[a] claim which is not raised in the complaint but, rather, is only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Accordingly, the Eastern District of Louisiana recently barred a plaintiff from raising alter ego arguments in support of her LPLA claims when she had made no such allegations in her complaint. *See Adams v. Eagle, Inc.*, 2022 WL 4110343, at *4–*5 (E.D. La. Sep. 8, 2022) (MORGAN, J.). That matter, however, was less than a month before trial and the court determined that allowing plaintiff to amend or otherwise expand her pleadings "would result in undue delay of this action and significant prejudice to [the defendant]." *Id.* at *5. Here the trial date is still over five months away, presenting a less compelling case for delay of the action. Additionally, CMA anticipated these arguments and was the first to raise them in its motion for summary judgment. The court will therefore consider plaintiffs' constructive request to amend.

To determine whether the seller is the alter ego of an alien manufacturer, the court considers: (1) whether the seller is affiliated with the alien manufacturer by way of common ownership or control; (2) whether the seller assumes or administers product warranty obligations of the alien manufacturer; (3) whether the seller prepares or modifies

the product for distribution; and (4) any other relevant evidence. *Stone Energy Corp. v. Nippon Steel*, 475 F.Supp.3d 563, 569 (W.D. La. 2020) (citing La. R.S. § 9:2800.53(1)(d)).

Under the first factor, CMA imports and sells a number of tire brands made by different manufacturers, including the Double Coin brand tires manufactured by subsidiaries of SHG. Doc. 133, ¶ 9. Its current members are Mike Yang and Yi-Bay Zang, both U.S. citizens and California residents; Double Coin Tyre Group, Ltd. ("DCTG"), a Chinese corporation; and Ping Ya Corporation, a California entity. *Id.* at ¶ 15. DCTG, an indirect subsidiary of SHG, holds a 52.40 percent membership interest in CMA while the other three members own the remaining 47.60 percent. *Id.* at ¶ 16. CMA is managed in part by Yang, in his role as Manager, and by a six-person Board of Directors, three of whom are appointed by DCTG. *Id.* at ¶¶ 17–18.

CMA maintains that this relationship does not show "common ownership or control." But there is scant caselaw on this factor, and CMA has admitted that the entity affiliated with SHG owns a majority stake in CMA and controls half of its board. Much is left unsaid from Yang's affidavit, including the affiliations of the remaining CMA members. Accordingly, there is at least a factual issue as to whether SHG exercises sufficient control over CMA for the affiliation to weigh in favor of alter ego status. *See Pickard v. Amazon.com, Inc.*, 2024 WL 4884428, at *9–*10 (W.D. La. Nov. 25, 2024) (Amazon's control over third-party sellers created factual issues in LPLA alter ego inquiry, despite lack of common ownership).

As for warranty obligations, CMA provides its own warranty on the tires it sells (including Double Coin tires). Doc. 134, ¶¶ 22–25. It "does not manage a warranty and

adjustment program for SHG, and CMA does not receive replacement tires or compensation from SHG for the warranty and adjustment claims that CMA approves on Double Coin tires." *Id.* at ¶ 26. But CMA also admits that it tracks the number of failures in each tire line and provides this information to SHG on an annual basis. Doc. 154, att. 1, pp. 44, 49–50. Though it maintains that it does not receive any feedback from SHG to its report, it has pushed SHG to address a defect leading to frequent warranty claims. *Id.* at 50–51, 71–76. Additionally, SHG stated in response to plaintiffs' interrogatories that "[w]arranty and adjustment claims and claims regarding Double Coin tires sold in North America are managed by [CMA], the importer and distributor of Double Coin tires in North America." Doc. 154, att. 2, p. 10. From this, it appears that the warranty program administered by CMA takes the place of any manufacturer's warranty and that CMA has assumed, at least in part, the warranty obligations of SHG. Plaintiffs have thus created material factual issues showing that this factor may weigh in favor of alter ego status.

As for the third factor, one division of this court recently acknowledged, "[j]urisprudence on [the third] factor, like the others, is scant" but the statutory language suggests "activities that are less hands-on than 'influencing and controlling' the product." *Stone Energy Corp.*, 475 F.Supp.3d at 570. Accordingly, another division of this court recently found sufficient factual issues even when Amazon's interaction with the product "was limited to storing the pre-packaged battery charger in its warehouse, retrieving the battery charger from the warehouse when ordered, placing the product in a shipping container or applying a shipping label to the product's box, and delivering or arranging delivery of the product to the buyer." *Pickard*, 2024 WL 4884428, at *12. CMA admits

that it is the "importer of record for Double Coin brand tires, such as the Double Coin RR900 that is at issue in this action," which it purchases from SHG in China and Thailand imports to the United States. Doc. 134, ¶¶ 12–13. Once the tires clear customs in the United States, they are either directly delivered to CMA's customers or sent to one of its warehouses. *Id.* at ¶ 14. CMA will perform testing on these tires, however, pursuant to a customer's request. Doc. 154, att. 1, pp. 21–24. CMA also acknowledged that it conducts a visual inspection of the tire before shipping it to customers. Doc. 154, att. 3, pp. 43–44. There is no evidence that it modifies the product. But under *Pickard* these activities may be sufficient to qualify as preparing the product for distribution, a factual question left to the jury.

    Plaintiffs present nothing under the fourth, catch-all factor. They have created numerous issues of material fact, however, as to whether CMA is the alter ego of foreign manufacturer SHG on the balance of the other three factors. Accordingly, summary judgment will be denied on this aspect of the motion.

    **B. Control or Influence**

    Under the control or influence prong, CMA's authority must extend to the characteristic in the product that causes damage to invite liability under the LPLA.[1] *Stone Energy Corp.*, 475 F.Supp.3d at 568 (citing *Frierson v. Spanset, Inc.*, 2010 WL 11537999, at *4 (E.D. La. Aug. 18, 2010)). As described above, CMA oversees warranty and adjustment claims for Double Coin tires sold in North America. Doc. 154, att. 1, pp. 42–

---

[1] CMA likewise objects to any analysis under this arm of the LPLA due to plaintiffs' failure to raise it in the complaint. For the same reasons provided under the alter ego arm, the court will consider these as plaintiffs' constructive motion to amend.

44. To this end it tracks the number of failures in each tire line and provides this information to SHG on an annual basis. *Id.* at 44, 49–50. CMA does not receive any feedback from SHG to its report. *Id.* at 50–51. It has, however, identified a defect ("out-of-round") causing frequent warranty claims and pushed SHG to address it. *Id.* at 71–76.

Under the control and influence arm, "[the defendant's] mere relay of information from [the buyer] to [the manufacturer] does not render [the defendant] a manufacturer under the LPLA." *Stone Energy Corp.*, 475 F.Supp.3d at 568. But CMA evidently exercised some influence over SHG's knowledge and handling of defects through its adjustment of warranty claims for the U.S. customer base. The degree to which it acted, or failed to act, on reports relating to whatever defect caused plaintiff's accident may prove its liability as a manufacturer under the LPLA. Accordingly, summary judgment will also be denied on this aspect of the motion.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 132] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 12th day of February, 2025.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**