UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BILLY SMITH** | : | **CASE NO. 2:19-CV-01111** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **CHINA MANUFACTURERS ALLIANCE LLC, ET AL.** | : | **MAGISTRATE JUDGE LEBLANC** |

## REPORT AND RECOMMENDATION

Before the Court is *Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint* filed by plaintiffs Tammie Smith, Eric Joseph Simon, Christina Marie Smith, Samantha Jo Smith, and Marshal Wayne Smith. Doc. 117. Defendants oppose the motion. Doc. 128. Plaintiffs have replied, making the motion ripe for resolution. Doc. 130. The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the following reasons, it is **RECOMMENDED** that the motion be **DENIED** because the wrongful death claims are time-barred. It is **FURTHER RECOMMENDED** that Plaintiffs be allowed to amend their complaint on or before June 30, 2025, solely to formally state the Plaintiffs' survival claims and to bring the pleading into compliance with federal pleading guidelines.

**I.**
**BACKGROUND**

This matter was originally brought in state court on July 18, 2019, and removed to this court based on federal diversity jurisdiction. Doc. 1. After original plaintiff Billy Smith died on

1

September 4, 2021,[1] counsel filed a Notice and Suggestion of Death on October 19, 2021, indicating that his surviving spouse, Tammie Smith, would seek leave to amend to bring wrongful death and survival claims. Doc. 44. Thereafter, on December 22, 2021, Tammie Smith, joined by Billy Smith's adult children, filed a motion to substitute under Rule 25 of the Federal Rules of Civil Procedure and Louisiana Civil Code art. 2315.1. Doc. 54 (as amended at doc. 64). A claim brought under Article 2315.1 is known as a "survival action" or "survival claim." In bringing their survival action and substituting into the role of plaintiff, Billy Smith's survivors stepped into his shoes and continued the lawsuit he had originally brought, seeking to recover all damages for injury to Billy Smith incurred before his death. The Court granted the motion to substitute on March 2, 2022, after it was amended once. Doc. 65.

Over two years later, on the deadline to file amended pleadings, the Plaintiffs filed *Plaintiffs' Motion for Leave to File First Amended and Supplemental Complaint.* Doc. 117. In addition to cleaning up the allegations of the complaint to formally state the Plaintiffs' survival claims and bring the pleading into compliance with federal pleading guidelines, the proposed amended pleading also seeks to "formally add Plaintiffs' wrongful death claims." Doc. 117, p. 1.

Defendants object to the motion to amend. Doc. 128. Defendants' primary argument[2] is that it would be improper to allow the amendment at this time under Fed. R. Civ. P. 15 because Plaintiffs' wrongful death claims are time-barred, and defendants would be prejudiced by having

---

[1] *See* doc. 64, att. 3 (Affidavit of Death and Heirship).

[2] Defendants also argue the motion for leave to amend is essentially untimely because it was filed on the deadline to amend pleadings. Defendants read the Court's scheduling order to require a litigant to seek leave to amend before the amendment deadline, such that the motion for leave would be fully briefed to be granted (or denied) by the amendment deadline. The Court does not adopt this interpretation. The scheduling order's amendment deadline refers to the deadline to request leave to amend.

to defend a new set of claims brought only four months before trial.[3] Plaintiffs argue in reply that the amendments relate back to the original complaint, so that they are not prescribed, and that any prejudice to Defendants could be cured by a continuance of the dispositive motions deadlines. Plaintiffs represent that Defendants would be unopposed to a continuance of the dispositive motions deadline. Doc. 130, p. 5.

## II.
### APPLICABLE LAW

On a motion to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). "Leave to amend, however, is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). The decision whether to grant leave is squarely in the discretion of the court, but the court "must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). In deciding a motion to amend, the court should consider several factors:

> whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action.

*Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983). Regarding the last of those factors, "futility," courts in this Circuit may deny leave to amend as futile if a claim is prescribed on its face and the relation back provisions of Federal Rule of Civil Procedure 15(c) do not apply. *See Jenkins v. Stan Ware Enterprises, Inc.*, No. CIV. A. 06-2217, 2008 WL 4091926, at *3 (W.D. La. Aug. 27, 2008); (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

---

[3] At the time the parties filed their briefs on this motion, trial had been set for March 17, 2025. Doc. 107. The District Judge thereafter continued the trial date to August 4, 2025 on his own motion, to accommodate the parties' estimate of the number of days required to try the case. Doc. 137.

3

Under Louisiana law, wrongful death claims are governed by Louisiana Civil Code article 2315.2, which provides that "[i]f a person dies due to the fault of another," certain individuals—in this case the surviving spouse and children of the decedent—may file suit "to recover damages which they sustained as a result of the death." La. Civ. Code art. 2315.2(A). The wrongful death action is different from the survival action. Under Article 2315.1 when "a person who has been injured by an offense or quasi offense dies" certain individuals (the decedent's "survivors") have "the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense." La. Civ. Code art. 2315.1(A). "Survival actions permit the beneficiaries to recover damages for the tort victim's own pain and suffering that occurred before the person's death," but "[w]rongful death actions compensate the beneficiaries for their own individual injury arising from the tort victim's death." *Brasseaux v. Chevron U.S.A. Inc.*, No. 6:20-CV-00460, 2020 WL 4519262, at *1-2 (W.D. La. Aug. 5, 2020). A wrongful death claim accrues on the decedent's date of death, and the right of action granted by the wrongful death statute "prescribes one year from the death of the deceased." La. Civ. Code art. 2315.2(B).

Under Article 2315.2, the plaintiffs had one year from Billy Smith's death on September 4, 2021, to bring a wrongful death claim. Plaintiffs filed their motion for leave to amend and supplement the complaint on November 18, 2024. The wrongful death claims are therefore facially prescribed unless the prescriptive period was interrupted,[4] or they relate back under Rule 15(c) of the Federal Rules of Civil Procedure. *Ducre v. Mine Safety Appliances Co.*, 634 F. Supp. 696, 697 (E.D. La. 1986).

Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of amendments and provides in relevant part:

---

[4] No one has argued the prescriptive period on Plaintiffs' wrongful death claims was interrupted, and so interruption will not be explored further.

4

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back; [or]
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; . . . .

Fed. R. Civ. P. 15 (alteration added).

Louisiana law supplies the applicable statute of limitations. "Federal courts employ Louisiana's relation-back doctrine in determining whether Louisiana claims relate back under Federal Rule of Civil Procedure 15." *Cleveland v. Bienville Med. Ctr., Inc.*, No. CV 21-4338, 2023 WL 2817713, at *2 (W.D. La. Apr. 5, 2023). The Louisiana rule for relation back is modeled on Rule 15(c) of the Federal Rules of Civil Procedure and provides: "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." La. Code Civ. Proc. art. 1153; *see also Faraldo v. Hanover Ins. Co.*, 600 So. 2d 81, 83 (La. Ct. App. 1992) ("Because La.C.C.P. art. 1153 is based on Federal Rule of Civil Procedure 15(c), its doctrinal commentaries and judicial interpretations are strongly persuasive as to the meaning and application of the Louisiana article.").

### III.
#### ANALYSIS

The court generally considers these factors in determining whether to grant leave to amend: a) undue delay; b) undue prejudice to the nonmovant; c) whether the amendment is made in bad faith or with a dilatory motive, d) movant's failure to cure deficiencies by prior pleadings, and e) futility of the amendment. *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983).

A.  **Undue delay**

The first factor considers undue delay. "Louisiana courts have emphasized that a defendant is not required to 'remain alert indefinitely to the possibility that a plaintiff *might* have a spouse or children, or both, who *might* at some future date bring a claim.'" *Efthemes v. Amguard Ins. Co.*, No. 2:19-CV-01409, 2020 WL 4043227, at *4 (W.D. La. July 17, 2020) (quoting *Phillips v. Palumbo*, 648 So. 2d 40, 42 (La. App. 4 Cir. 1994))(emphasis original)(finding no relation back of plaintiff's wife's loss of consortium claims). Plaintiffs waited two years after bringing their survival claims to formally state their wrongful death claims. To be "undue," delay "must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). "While delay alone may not be a sufficient reason to deny leave to amend, amendment should not be allowed where the proposed amendment would prejudice the opposing party." *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

B.  **Prejudice to the opposing party**

The second factor considers prejudice to the nonmovant. Prejudice may be the most important factor in deciding a motion for leave to amend, and it can result when the proposed amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. CIV A 3:06-CV-0073-D, 2007 WL 2592353, at *2 (N.D. Tex. Sept. 10, 2007) (quoting 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1487, at 613 (2d ed. 1990)). When a late amendment involves a new theory of recovery that would impose additional discovery requirements, prejudice to the nonmovant can justify denial of the motion to amend. *See Mayeaux,* 376 F.3d at 427. "A

defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court.'" *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (alteration original)(quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

Defendants make a strong argument that permitting the amendment at this stage will cause undue prejudice. Defendants' arguments focus on the need to conduct additional discovery as to the cause of Billy Smith's death because a wrongful death claim requires proof that a person has died "due to the fault of another." La. Civ. Code art. 2315.2(A).[5] In addition, the wrongful death claims would necessitate discovery as to the "damages [Plaintiffs] sustained as a result of the death." *Id.* (alteration added).

Plaintiffs offer no explanation for the delay in seeking to amend, other than to state that Defendants have been on notice of their intent to bring wrongful death claims since the Notice and Suggestion of Death. Doc. 117, p. 9. Plaintiffs assert that the causation of Billy Smith's death has been an issue in this litigation since he died. Plaintiffs also assert that their depositions have already been scheduled and that Defendants should have ample time to file a dispositive motion as to the wrongful death claims if the Court allows the amendment and an extension of the dispositive motions deadline. Doc. 130, p. 4. Not stated by the Defendants, but of importance to the Court, is the fact that the district judge has created a special two-week trial setting for this matter because of the parties' estimate of the time required to try the case. Any further delay of the trial date would likely be longer than the parties anticipate because of the difficulty of creating

---

[5] This report does not address the merits of Defendants' disputed contention that the causation of Billy Smith's death is a "new" issue raised by the amendment. Rather, these recommendations are based on the fact that Plaintiffs' wrongful death claims seek redress for their own damages, which are undisputedly new claims.

another such setting in the short term, prejudicing both parties. The delay and resulting prejudice are therefore undue, and both factors weigh against allowing amendment.

**C.     Whether the amendment is made in bad faith or with a dilatory motive**

The third factor considers whether the amendment is made in bad faith or with dilatory motive. Defendants make no allegation of dilatory motive or bad faith, so this factor does not weigh against amendment. But waiting three years to bring a new theory of recovery on the deadline to amend pleadings gives the appearance of an attempt at trial-by-ambush, even in the absence of actual bad faith.

**D.     Failure to cure deficiencies by prior pleadings**

The fourth factor asks whether movant has failed to cure deficiencies by prior pleadings. The October 19, 2021, Notice and Suggestion of Death indicated Tammie Smith's intention to seek leave to amend to add a claim for wrongful death and survival claims [doc. 44], but no such amendment was attempted for approximately three years, and then on the deadline to amend pleadings. This factor weighs against amendment because Plaintiffs had opportunity to carry out their intention by prior amendment and neglected to do so.

**E.     Futility**

The fifth factor considers whether the claims are futile. As indicated above, Defendants argue the amendment is futile because the wrongful death claims are prescribed. Plaintiffs argue the claims relate back to the original petition, relying heavily on *Lagan v. Owens-Corning Fiberglas Corp.*, No. Civ. A. 80-4338, 1996 WL 445350, at *2; 1996 U.S. Dist. LEXIS 11586, at *3-4 (E.D. La. Aug. 5, 1996) for this proposition. It is recommended that the wrongful death claims are futile because they do not relate back to the original petition.

In a line of cases stemming from *Giroir v. S. Louisiana Med. Ctr., Div. of Hosps.*, 475 So. 2d 1040, 1042 (La. 1985), Louisiana courts have allowed late-filed amendments substituting new plaintiffs in cases in which another family member's wrongful death and/or survival actions (or the equivalent) was already pending, if a four-factor test was satisfied.[6] *See Faraldo v. Hanover Ins. Co.*, 600 So. 2d 81, 84 (La. App. 4 Cir. 1992) (noting that *Giroir* is the lead case); *see also Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 441 (5th Cir. 2019) ("Louisiana's relation-back doctrine as applied to the substitution of plaintiffs is governed by" *Giroir*). Thus, in *Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 444 (5th Cir. 2019), the United States Fifth Circuit Court of Appeals reversed the dismissal of decedent's children's wrongful death claims, finding that they related back to their grandmother's similar claims under Louisiana law.[7]

Although this case resembles the *Giroir* line of cases, the *Giroir* test does not apply here because the amendment does not add new plaintiffs; it adds new claims. The *Giroir* test assesses

---

[6] In *Giroir*, the Louisiana Supreme Court determined that the amended claims adding new parties relate to the original lawsuit if they meet four criteria:

> (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.

*Giroir*, 475 So. 2d at 1044.

[7] In *Nobre*, decedent's mother had filed a wrongful death and survival claim, and a year later, she learned that the decedent had two children, who were the proper parties to bring such claims under Louisiana law. *Id.* Sixteen days after the running of the prescriptive period, the mother moved to substitute the children's natural tutors as plaintiffs. The district court held that the claims did not relate back and dismissed them as untimely, but the Fifth Circuit reversed, reasoning in relevant part that defendants had shown no evidence of prejudice, and that the substituted children suffered the same sort of harm alleged by the grandmother they replaced:

> Formally, the underlying harms suffered by Cotton's children are independent from those suffered by Moore—this was true also in *Giroir*. But Cotton's children and Cotton's mother are closely related, and the substitution of the decedent's family members as plaintiffs leaves the basic underlying facts and claim unchanged.

*Nobre*, 935 F.3d at 442.

relation back when new plaintiffs seek to associate themselves with similar, existing, timely claims. "In *Giroir* the filing of the formal claim of wrongful death by one member of the family was enough to allow the otherwise untimely amendment of other family members to relate back to the original pleading. In effect, the only issue before the Court was whether amending the original petition to add parties related back to the date similar claims had been asserted." *Ducre v. Mine Safety Appliances Co.*, 634 F. Supp. 696, 699 (E.D. La. 1986).

Plaintiffs agree the *Giroir* test does not apply here because they are not "new plaintiffs." Doc. 117, p. 7.  They argue the Court instead should look for guidance in *Lagan v. Owens-Corning Fiberglas Corp.*, No. Civ. A. 80-4338, 1996 WL 445350, at *2; 1996 U.S. Dist. LEXIS 11586, at *3-4 (E.D. La. Aug. 5, 1996).[8]

Like *Giroir*, *Lagan* is distinguishable.  In *Lagan*, a husband and wife sued alleging the husband was exposed to asbestos during his employment, resulting in damages including physical illness, pain and suffering, and disability.  The wife also sought damages for loss of her husband's society, services, and support as a result of his illness.  *Id.* at *1.  The husband died after suit was filed, and about three years later, the wife sought to amend the lawsuit to state survival and wrongful death claims.  *Id.*  The court determined that the facially prescribed wrongful death claim related back to the original claim because "the original petition notified defendant that Mrs. Lagan

---

[8] In Plaintiffs' Notice of Supplemental Authority [doc. 169], Plaintiffs also urge the application of the recent decision in *Madden v. Fairburn*, No. 2025-c-00122, 2025 La. LEXIS 784, 2025 WL 1527047 (La. May 29, 2025).  Madden, who had been a passenger in driver A's car during a traffic accident, sued her own UM carrier alleging driver B's fault, and then amended the claims against her UM carrier to allege driver A's fault after summary judgment in favor of driver B.  The Louisiana Supreme Court held the amendment related back because "[i]n both the original and amended petitions, plaintiff asserted claims against the UM insurer under the same policy, arising from the same accident. The difference in the original and amended petitions is the allegation of which driver was at fault." *Id.* at *2.  In *Madden*, the nature of plaintiff/insured's damages was unchanged by the amendment, even though her theory changed as to who was at fault for those damages.  Here, by contrast, the wrongful death claims raise a wholly new species of damages that arise only partially out of the original occurrence that gave rise to Billy Smith's injuries; *Madden* is therefore distinguishable.

was suing for the loss of her husband's society, support, and services as a result of his illness. Adding the wrongful death claim does not affect the issue of liability, nor does it significantly affect the type of evidence needed to establish damages." *Id.* at *2.

Here, by contrast, the original petition does not seek redress for damages suffered by people other than Billy Smith. The current plaintiffs, Billy Smith's surviving spouse Tammie Smith, and his children, Eric Joseph Simon, Christina Marie Smith, Samantha Jo Smith, and Marshal Wayne Smith, each seek to bring a wrongful death claim "to recover damages which they sustained as a result of the death" of Billy Smith. La. Civ. Code. art. 2315.2. These damages include "mental anguish, loss of companionship, support, guidance, society, affection, grief and sorrow, and funeral and burial expenses." Doc. 117, att. 1, pp. 9-10. Their wrongful death claims would affect the issue of liability and alter, in part, the type of evidence needed to establish damages. *See Williams v. Boeing Co.*, 23 F.4th 507, 517 (5th Cir. 2022) ("Even though the wrongful death claim arises from the same conduct, transaction, or occurrence of the survival claim, the evidence required to establish damages for [the survivors] would almost certainly be different from the evidence required to establish damages for [original plaintiff]").

This case more closely resembles *Ducre v. Mine Safety Appliances Co.*, in which plaintiff alleged that he sustained personal injury and illness as a result of occupational sandblasting activities. 634 F. Supp. 696, 697 (E.D. La. 1986). He filed suit against alleged tortfeasors on his own behalf and died a few months later. *Id.* Over one year after his death, his widow and children filed a supplemental and amending complaint asserting a wrongful death action and substituting themselves as plaintiffs via survival action. *Id.* On defendants' motion for summary judgment, the court distinguished *Giroir* and dismissed the wrongful death claim as prescribed, reasoning, "This Court rejects plaintiffs' argument that the defendants' knowledge of the decedent's death is

11

tantamount to the filing of a formal claim for wrongful death. To hold otherwise, would defeat the 'essential purposes of the prescriptive statute.'" *Id.* at 699.

The Fifth Circuit reached a similar conclusion in *Williams v. Boeing Co.*, a procedurally complex case, in which the original plaintiff died shortly after filing suit and "Plaintiffs finally described their wrongful death claim in their First Amended Petition for Damages" nearly four years later. *Williams*, 23 F.4th at 515–16. Over plaintiffs' argument that their wrongful death claims related back to the original petition, the *Williams* court found the wrongful death claims time-barred but remanded the action for further proceedings on their survival action. *Id.* at 517 (distinguishing *Giroir* and *Lagan*; citing *Ducre* with approval).

Under the rule of *Ducre* and *Williams*, Plaintiffs' wrongful death claims are time-barred and do not relate back. Accordingly, it is recommended that the wrongful death claims would not survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The futility of the claims, combined with the undue delay and prejudice to non-movant, together constitute a "substantial reason" to deny Plaintiffs' motion to amend. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

## IV.
### Conclusion

For the reasons stated, it is **RECOMMENDED** that *Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint* [doc. 117] be **DENIED.**

The motion sought not only to add Plaintiffs' wrongful death claims, but also to "formally enumerate/list out the Plaintiffs' survival claims" and "update the existing allegations to conform with federal pleading standards/formatting." Doc. 117, p. 1. The Court is not inclined to attempt to redact Plaintiffs' proposed amended pleading, extracting the wrongful death allegations and preserving the remainder. Accordingly, it is **FURTHER RECOMMENDED** that Plaintiffs be

allowed to amend their complaint on or before June 30, 2025, solely to formally state the Plaintiffs' survival claims and to bring the pleading into compliance with federal pleading guidelines.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), any party aggrieved by this Report and Recommendation has 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lake Charles, Louisiana, this 11th day of June, 2025.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**