UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BILLY SMITH**                              CASE NO. 2:19-CV-01111

**VERSUS**                                   JUDGE JAMES D. CAIN, JR.

**CHINA MANUFACTURERS ALLIANCE LLC ET AL**   MAGISTRATE JUDGE LEBLANC

## MEMORANDUM ORDER

Before the court is a *Daubert* Motion to Exclude the Testimony of Defendants' Expert Joseph Grant, filed by plaintiffs. Doc. 172. Defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG") oppose the motion. Doc. 190.

## I.
### BACKGROUND

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 dump truck while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires manufactured by SHG and distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and SHG under Louisiana Civil Code article 2315 based on their negligent design,

manufacture, and distribution of the tires.[1] *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Doc. 1. Smith passed away on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

Defendants seek to introduce testimony from tire failure expert Joseph Grant. Plaintiffs now move to exclude that testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 172. Defendants oppose the motion. Doc. 190.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as a gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the

---

[1] The complaint does not explicitly invoke the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, but appears to limit its claims to that statute's exclusive theories of recovery. The LPLA's exclusivity for claims against the manufacturer of an allegedly defective product is "well-established" under Louisiana law. *Rivers v. Remington Arms Co.*, 2018 WL 746392, at *2 (E.D. La. Feb. 7, 2018) (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)). The court has already established through its summary judgment ruling that plaintiffs' claims arise under the LPLA, as they seek to hold SHG liable as manufacturer and CMA liable as its alter ego or exercising sufficient control and influence over SHG, as set forth under La. R.S. 9:2800.53(1)(b) and (d). Doc. 160; *see, e.g.*, *Tuminello v. ABC Ins. Co.*, 381 So.3d 320, 333 (La. Ct. App. 3d Cir. 2024) (LPLA was plaintiff's exclusive remedy against domestic distributor of foreign-manufactured product, where distributor qualified as manufacturer under the statute).

expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[2] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Mr. Grant opines that the tire at issue was free of any defects and that its failure was due to earlier impact damage. Doc. 192, att. 6, p. 105. Plaintiffs argue that this testimony is unreliable under the above standards because, in reaching his conclusions, Mr. Grant did

---

[2] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

not examine any design or manufacturing specifications. Plaintiffs further allege that Mr. Grant did not consider possible alternative causes of the tire's failure. To determine whether Mr. Grant's testimony is admissible, this Court must examine his qualifications to provide his expert opinion on the matter, the relevance of his testimony in this suit, and the reliability of Mr. Grant's methods in forming his conclusions.

Regarding his qualifications, Mr. Grant possesses over thirty years of experience as a forensic tire analyst, along with over fifty years of experience in the tire industry. Doc. 192, att. 7, p. 122. He has held multiple managerial and directorial positions during his employment with tire manufacturing companies and has been published several times. *Id.* Mr. Grant has been called upon to provide his expert opinions in numerous prior cases. *Id.* at 123. On these grounds, Mr. Grant is evidently qualified to provide testimony in tire failure cases. Plaintiffs do not dispute whether Mr. Grant is qualified to testify, nor do they argue that his testimony would be irrelevant. Rather, they question the reliability of Mr. Grant's findings and his processes of reaching them. Specifically, Plaintiffs contend that Mr. Grant's testimony is unreliable because: (1) he did not review the tire's design or manufacturing specifications, (2) there is little evidence supporting his theory of impact damage causing the tire's failure, and (3) he failed to exclude possible alternative causes.

1. **Review of design and manufacturing specifications**

In his deposition, Mr. Grant stated that, due to his years of experience and his physical analysis of the tire, there was no need for him to review any specifications. Doc. 172, att. 2, p. 12. This assertion is entirely plausible. Certainly, a professional possessing the same vast experience as Mr. Grant would be capable of recognizing certain defects or

causes of failure without needing to probe entire archives of schematics. A physical examination of both the tire and its companion tire, as well as each tire's wheel, allowed Mr. Grant to form his opinion as to why the tire failed. If the reason for the tire's failure can be diagnosed through a physical examination, reviewing the tire's specifications might be unnecessary. Mr. Grant's findings are not inaccurate simply because he reached them without needing to review certain documents. Challenging his conclusions on this basis is better reserved for cross-examination.

### 2. Challenges to Grant's impact damage theory

Mr. Grant opined that an earlier impact weakened the tire's durability, and subsequent use of the then damaged tire eventually caused it to fail, leading to the accident at issue. Doc. 192, att. 6, p. 108. Defendants counter that Mr. Grant provides no data supporting this conclusion. Under the Examinations section of his report, Mr. Grant observed several detached steel belts and rusted steel cords on the tire. *Id.* at 102. He reasons that the steel belt detachments resulted from an impact to the tire, which was left either unrepaired or improperly repaired. *Id.* at 106. The steel cords, then left exposed, were able to rust, severely weakening the tire. *Id.* at 109. After prolonged use, the tire ultimately failed.

Mr. Grant notes that, upon a physical examination, the steel cords were not faulty and were in line with industry standards. *Id.* at 112. Furthermore, Mr. Grant observed many penetrations within the tire's tread, indicating that it "had been used in service [in areas] where the tire was subjected to conditions" that would likely cause impact damages to occur. *Id.* When asked about the process he used to reach his conclusion, Mr. Grant stated

that he was reminded of a test he performed while employed by Continental Tire. Doc. 172, att. 2, p. 35. During this test, Mr. Grant and his coworkers would cut a tire to expose its steel-belt cords. *Id.* After running the tire along a test track and allowing water to touch the cords, Mr. Grant and his team would then examine the tire's insides. *Id.* They found the that the steel cords had visibly rusted, causing the tire's adhesion to break down. *Id.* According to Mr. Grant, those tires "[look] exactly like [] the subject tire." *Id.* at 36.

Plaintiffs' assertion that Mr. Grant could not identify what caused the impact is not dispositive, nor does it render his testimony moot. Doc. 172, p. 7. Plaintiffs' assertion, in fact, is incorrect. Mr. Grant did identify the impact object as having "an [approximately] half-inch diameter." Doc. 172, att. 2, p. 28. Any number of potential impact objects could possess a similar diameter. It is reasonable that an expert like Mr. Grant could diagnose impact damage as the cause of a tire's failure but be unable to identify the particular object that impacted the tire. Nonetheless, establishing the impact object's approximate diameter gives credence to Mr. Grant's assessment.

Mr. Grant cites several academic papers and guides as authorities supporting his conclusions. Additionally, Mr. Grant lists the case-specific materials he reviewed when forming his opinion. Among them are his physical examination of the tire, companion tire, and their wheels; x-rays and photographs of the tire; the accident report; and Plaintiff's responses. Doc. 192, att. 6, p. 119. There is ample evidence, which Mr. Grant has supported, that his finding of impact damage as the cause of the tire's failure is a reasonable conclusion.

### 3. Challenges to Grant's failure to consider alternative causes

Finally, Plaintiffs argue that Mr. Grant failed to exclude other potential causes of the tire's failure. In his report, Mr. Grant excluded a design or manufacturing defect from having caused the tire's failure. Doc. 192, att. 6, p. 105. He found that the tire complied with federal regulations and industry standards, because it had been tested and stamped. *Id.* Mr. Grant explains that, in order to be sold, all tire must "pass a series of durability standards," including strength and endurance tests. The subject tire was properly stamped as having passed those tests. Furthermore, Mr. Grant refers to a 2005 NHTSA publication, which states that "design and manufacturing defects are extremely rare," because the tire industry has committed decades of research to ensuring functional, defect-free products. *Id.* Noting this, Mr. Grant determined that neither a design or manufacturing defect could have caused the tire's failure and excluded both as alternative causes.

The Court finds no basis for excluding Mr. Grant's testimony. Should Plaintiffs wish to challenge his opinions further, they may appropriately do so during cross-examination.

## III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiffs' *Daubert* Motion [doc. 172] be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on the 1st day of July, 2025.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE