UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BILLY SMITH**                             **CASE NO. 2:19-CV-01111**

**VERSUS**                                  **JUDGE JAMES D. CAIN, JR.**

**CHINA MANUFACTURERS ALLIANCE L L C ET AL**   **MAGISTRATE JUDGE LEBLANC**

MEMORANDUM ORDER

Before the court is an omnibus Motion in Limine [doc. 181] filed by defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG"). Plaintiffs have filed a response, opposing the motion in part. Doc. 200.

I.
BACKGROUND

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 dump truck while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires, manufactured by SHG and distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and SHG, under Louisiana Civil Code article 2315 based on their negligent design,

manufacture, and distribution of the tires.[1] *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Smith passed away on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

Defendants now bring this omnibus Motion in Limine, seeking to exclude the following:

1. CMA and SHG's inability to determine where and when the tire was manufactured

2. CMA and SHG's inability to determine when the tire was sold

3. Tire markings indicating shipment, distribution, or sale

4. Defendants' document retention policy

5. Closure of SHG's Shanghai plant in 2016

6. Unavailability of documents from SHG's former Shanghai plant

7. Post-sale duty to warn

8. Other accidents, claims, or lawsuits involving CMA or SHG

9. Limitation on Troy Cottles's testimony concerning tire specifications and manufacturing procedures

---

[1] The complaint does not explicitly invoke the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, but appears to limit its claims to that statute's exclusive theories of recovery. The LPLA's exclusivity for claims against the manufacturer of an allegedly defective product is "well-established" under Louisiana law. *Rivers v. Remington Arms Co.*, 2018 WL 746392, at *2 (E.D. La. Feb. 7, 2018) (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)). The court has already established through its summary judgment ruling that plaintiffs' claims arise under the LPLA, as they seek to hold SHG liable as manufacturer and CMA liable as its alter ego or exercising sufficient control and influence over SHG, as set forth under La. R.S. 9:2800.53(1)(b) and (d). Doc. 160; *see, e.g.*, *Tuminello v. ABC Ins. Co.*, 381 So.3d 320, 333 (La. Ct. App. 3d Cir. 2024) (LPLA was plaintiff's exclusive remedy against domestic distributor of foreign-manufactured product, where distributor qualified as manufacturer under the statute).

10. SHG's lack of obligation to keep records in English

11. Suggestion that specifications in Chinese are less stringent than those in English

12. Asking witnesses to translate or interpret between Chinese and English

13. Speculation regarding when Kent & Smith Holdings, LLC purchased the subject tire

14. Kent & Smith Holdings, LLC's reputation as a safe and conscientious company

15. Wealth of defendants

16. Liability based on CMA or SHG's corporate status

17. Comparative poverty of plaintiffs

18. Golden Rule arguments

19. Conscience of the community arguments

20. Insurance policies or coverage

21. Requests to produce evidence

22. Efforts to exclude or limit evidence

23. Other representation by defense counsel of CMA, SHG, or other defendants

24. Size of defense counsel's firm

25. Cause of Mr. Smith's death

26. Damages past the time of Mr. Smith's death

27. Statements on the law of the case other than the burden of proof

28. Statements that "preponderance" means 51 percent of the evidence

Doc. 181. Plaintiffs oppose the motion in part, as described below.

## II.
## LAW & APPLICATION

### A. Governing Law

Evidence is generally admissible so long as it is relevant and not barred by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Among other grounds, the court may exclude relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.* at 403.

Evidence should only be excluded in limine where it is "clearly inadmissible on all potential grounds." *Hull v. Ford*, 2008 WL 178890, at *1 (S.D. Tex. 2008) (citing *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993)). "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5174440, at *1 (W.D. La. Dec. 15, 2010) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)). Evidentiary rulings, however, "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id.*; *accord Baxter v. Anderson*, 277 F.Supp.3d 860, 863 (M.D. La. 2017). Additionally, motion in limine rulings "are not binding on the trial judge . . . and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n. 3 (2000).

B. Application

1. Inability to determine where and when tire was manufactured

Defendants note that the DOT code and serial number on the subject tire, which would have allowed them to determine the manufacturing plant and year of manufacture, were burned off in the accident. Accordingly, they argue that it would be prejudicial for plaintiffs to argue that, notwithstanding what happened to the tire during the accident, defendants should be able to determine where and when it was manufactured. Plaintiffs respond that they do not intend to suggest or argue that defendants should still be able to determine when and where the subject tire was manufactured. They go on to note evidence from the records of Kent & Smith Holdings, however, suggesting that the tire was manufactured in 2016 in either Shanghai or Rugao. Doc. 200, p. 4. The court finds no basis to bar this evidence, but **GRANTS** the motion to the extent plaintiffs would suggest that defendants should be able to independently verify the tire's origin in the absence of its DOT code or serial number.

2. Inability of defendants to determine when the tire was sold

Defendants likewise assert that, without the serial number or DOT code, they cannot determine when the tire was sold by SHG to CMA and whether it was stored in one of CMA's warehouses for any length of time before being shipped to the end distributor, Southern Tire Mart. Plaintiffs respond that defendants "obtained information based on internal tire sales . . . which evidence that the Subject Tire was most likely sold to Southern Tire Mart in 2016." Doc. 200, pp. 5–6. They do not appear to dispute, however, that defendants are unable to confirm this without the appropriate code or serial number.

Accordingly, the court agrees that plaintiffs should not be permitted to suggest otherwise to the jury and **GRANTS** the motion in this regard.

### 3. Absence of DOT code or serial number

Defendants likewise seek to bar any argument or suggestion that they "are responsible for the absence of a DOT Code or Serial number on the tire." Doc. 181, att. 1, p. 7. Plaintiffs offer no opposition, "as it is undisputed that a portion of the Subject Tire's DOT code was destroyed as a result of the Incident." Doc. 200, p. 6. The motion is therefore **GRANTED** in this regard.

### 4. Document retention policy

Defendants seek to bar "argument or allegations that CMA and SHG spoliated evidence or that Plaintiffs or Intervenor are entitled to any adverse inference based upon the absence of documents" from 2016, the year the tire was likely manufactured, or earlier. Doc. 181, att. 1, p. 8. Plaintiffs respond that they do not intend to seek a spoliation instruction but that the court should not issue a broad prohibition against questions on what records were created, what records are no longer available, and the reason for their absence. Defendants maintain that such questions are irrelevant if plaintiffs do not intend to seek a spoliation instruction. The court will **GRANT** the original request as written, prohibiting any argument or allegations of spoliation, but cannot determine at this point whether questions regarding defendants' documentation and recordkeeping might otherwise prove relevant. Accordingly, the request is **DENIED** as to broader prohibitions on questions about defendants' records.

### 5. Subsequent remedial measures

Defendants seek to exclude any evidence or argument that the closure of SHG's Shanghai plant in 2016 demonstrates negligence by SHG or any defect in Double Coin tires. They argue that this closure constitutes a subsequent measure and is barred under Federal Rule of Evidence 407, which states in pertinent part:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.

Fed. R. Evid. 407. Under the rule's plain language, however, the measures are only excludable if they are "subsequent" to the "injury or harm." *See Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 44 n. 1 (5th Cir. 1989) (in products liability case, rule did not apply to measures taken by manufacturer after product was manufactured but prior to injury giving rise to lawsuit); *accord Sexton v. Exxon Mobil Corp.*, 484 F.Supp.3d 321, 328 (M.D. La. 2020). The motion is therefore **DENIED** in this regard. To the extent defendants believe that the evidence is otherwise unfairly prejudicial or irrelevant, they may present these objections at trial.

### 6. Unavailability of documents from SHG's former plant in Shanghai

Defendants note that the Shanghai plant closed two years before the accident in question and three years before the lawsuit in question. Accordingly, they maintain that they were under no duty to preserve any records from that plant and that plaintiffs should be prohibited from insinuating otherwise. Plaintiffs respond again that they do not intend

to seek a spoliation instruction but that the court should not issue a "premature, blanket ruling" improperly restricting their ability to develop otherwise admissible evidence and arguments. While the court could agree as to broader questions relating to document retention, it understands that questions relating to a plant that closed well before the subject accident could mislead the jury into thinking defendants negligently or nefariously failed to retain relevant records. Accordingly, the motion is **GRANTED** in this regard.

### 7. Post-sale duty to warn

The Louisiana Products Liability Act ("LPLA") provides that "[a] product is unreasonably dangerous" due to inadequate warning "if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning . . . ." La. R.S. 9:2800.57(A). However, a manufacturer is not required to provide such a warning when:

> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
>
> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

*Id.* at § 9:2800.57(B). Additionally, a post-sale duty to warn may arise under certain circumstances:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for

> damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

*Id.* at § 9:2800.57(C).

Defendants state that plaintiffs' discovery indicates they may seek to fault defendants for failing to warn that partial punctures must be repaired and for failing to warn against improper repairs. They note that the complaint contains no allegations of a post-sale duty to warn, and that plaintiffs' experts have not addressed the issue. Accordingly, they request that the court bar any such insinuation at trial. Plaintiffs maintain, however, that their LPLA failure to warn claim falls within the general duty under La. R.S. § 9:2800.57(A), supra, and that "[t]he risks associated with puncture damage and both proper and improper repairs were reasonably anticipated by Defendants long before the subject tire left their control." Doc. 200, p. 9. They also accuse defendants of seeking a dispositive ruling on the claim through their motion in limine.

To the extent that plaintiffs have not pled a post-sale duty to warn claim and acknowledge that they are not pursuing one, the motion is **GRANTED** in this regard. The ruling does not prohibit plaintiffs from presenting evidence regarding defendants' general duty to warn, however.

### 8. Other accidents, claims, or lawsuits involving defendants

Plaintiffs seek to introduce evidence from two other cases involving defendants' tires, *Doty v. China Manufacturers Alliance LLC*, No. 2:20-cv-0154 (N.D. Ala. Mar. 29, 2023), and *Frisch v. Shanghai Huayi Group Corp. Ltd.*, No. 1:23-cv-0015 (N.D. Iowa May 16, 2023). The subject tires in those cases, plaintiffs assert, bear similarities to the one in

this matter: the *Doty* tire, an RLB900, is the same size as the subject tire and was manufactured in 2017 at SHG's Rugao plant. Doc. 200, p. 12. Meanwhile, the *Frisch* tire is an RR900 (the same model involved in this case) and was manufactured in 2014 at SHG's Shanghai plant. *Id.* Both tires were installed on dump trucks and suffered tread separations during highway operation. *Id.* In both cases, plaintiffs' tire failure expert Troy Cottles was retained by plaintiffs to offer opinions on the subject tires and found the same defects identified in this case. Accordingly, plaintiffs argue that these claims are admissible to establish notice, defect, alternative design, and causation.

      In a products liability case, "evidence of prior instances is admissible on the issues of the existence of a design defect and a defendant's knowledge of that defect only if a plaintiff shows that the incidents 'occurred under circumstances substantially similar to those at issue in the case at bar.'" *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1195 (D.C. Cir. 1986) (quoting *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981)); *cf. Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) ("When evidence of other accidents . . . is offered for any purpose other than to show notice, the proponent must show that the facts and circumstances . . . are 'closely similar' to the facts and circumstances of the case."). The proponent of the evidence bears the burden of showing that the prior incidents are sufficiently similar to the circumstances at issue. *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988). Even if he meets this burden, "the district court has broad discretion to exclude such evidence" under Federal Rule of Evidence 403. *Johnson*, 988 F.2d at 579.

According to plaintiffs, the prior suits involved similar tires manufactured by the same company, around the same time as the subject tire. But at this point the court has only the word of plaintiffs and their expert to consider for the circumstances. Without more factual development and an opportunity for defendants to traverse, the court cannot determine if the incidents are sufficiently similar or if they pose too great a danger of unfair prejudice or confusion under Rule 403. Accordingly, the ruling is **DEFERRED** in this regard.

9. **Limitations on Troy Cottles's testimony**

Defendants also request that the court limit testimony from Troy Cottles on SHG tire specifications and manufacturing procedures "that he has not read or for which he lacks firsthand knowledge." Defendants should have argued for these limitations on Mr. Cottles's testimony under their *Daubert* motion. At any rate, defendants have attached no testimony or other evidence concerning the bases for Cottles's opinions to this motion and the court thus has no grounds to place any preemptive limits on the opinions he may offer at trial. The motion is **DENIED** in this regard. Defendants must reserve their challenges to the bases for Mr. Cottles's opinions for trial.

10. **SHG Recordkeeping**

Defendants request that the court exclude any testimony or suggestion that SHG, a Chinese company, has any obligation to keep records in English. Plaintiffs state that they do not intend to make any such argument or suggestion and acknowledge SHG's right to maintain its records in Chinese. The motion is therefore **GRANTED** in this regard.

11. **Specifications in Chinese language**

Defendants likewise request a ruling prohibiting plaintiffs from arguing that CMA or SHG were required to maintain tire specifications and manufacturing procedures or specifications in English, or that such specifications and procedures in Chinese are less stringent than those in written English. Plaintiffs acknowledge that defendants are under no such obligation but object to a prohibition on argument suggesting that SHG's Chinese language specifications are less stringent than those written in English, because this might prevent plaintiffs from attacking SHG's specifications in general. Defendants reply that they are only seeking to preclude argument that SHG's specifications are deficient **because** they are written in Chinese. The court agrees that any such argument would be improper, and **GRANTS** the motion insofar as plaintiffs are prohibited from arguing that defendants had any obligation to issue their specifications in English or that the specifications were in any way deficient due to the fact that they were issued in Chinese.

12. **Witness interpretation**

Defendants ask the court to prohibit any party from asking defense witnesses to interpret or translate any documents, writings, testimony, or communications from Chinese to English or English to Chinese. They maintain that any interpretations or translations must come through an official, qualified interpreter at the party's own expense. Plaintiffs agree that such a request is improper and state that they are aware of their obligations. Accordingly, the motion is **GRANTED** in this regard.

13. **Speculation regarding when Kent & Smith purchased the tire**

Defendants ask that the court exclude speculation as to when Kent & Smith Holdings purchased the subject tire, noting that it regularly purchased Double Coin RR900 tires from the same vendor. Plaintiffs assert that they can narrow down the date based on maintenance and purchase records. Defendants reply that they only seek "to preclude . . . eliciting testimony or argument that the purchase date is unknown." Doc. 206, p. 5. To the extent defendants seek to bar plaintiffs from making logical inferences based on their own evidence, the motion is **DENIED**.

14. **Kent & Smith's reputation**

Defendants request that the court bar evidence regarding Kent & Smith's reputation as a safe and conscientious company, noting that it is not admissible under Federal Rules of Evidence 404(a)(1) or 608(a). Plaintiffs generally agree that such evidence is inadmissible to prove the company's good character but argue that, depending on the context of trial and the claims or defenses raised, it may become relevant and admissible for other purposes. For instance, they assert, if defendants offer evidence suggesting Kent & Smith had a reputation for unsafe operations or poor maintenance, plaintiffs must be permitted to respond with rebuttal evidence.

The court **GRANTS** the motion insofar as evidence regarding any corporate entity's reputation is inadmissible to show its good character, leaving for trial any other contexts in which the parties believe the evidence may be admissible.

15. **Wealth of defendants**

Defendants also request that the court bar evidence regarding their size, wealth, revenues, profits, or resources. Plaintiffs state that they do not intend to offer direct evidence on these points, but that it will become obvious "through the basic facts of the case" that defendants "are large companies with considerable resources." Doc. 200, p. 20. They also assert that they will point out defendants' sophistication and resources in order to show that a safer alternative design of the tire was feasible. *Id.* The court **GRANTS** the motion insofar as plaintiffs are precluded from making arguments regarding the comparative resources of the parties or asserting that the damages awarded should be tied to defendants' ability to pay.

16. **Corporate status**

Defendants ask the court to bar argument or evidence attempting to impose liability on either defendant based on their status as corporate entities. Plaintiffs maintain that they must be able to reference defendants' corporate status in order to conduct an appropriate voir dire, and that some evidence regarding defendants' sophistication is necessary to establish their duty of care. Defendants clarify that they are only seeking a prohibition on arguments that they are liable based on their corporate status. The court agrees that such arguments are improper and **GRANTS** the motion in this regard.

17. **Comparative poverty of plaintiffs**

Defendants likewise seek to bar evidence or argument regarding plaintiffs' status in comparison to defendants. Plaintiffs maintain that they do not intend to make any direct reference to the parties' comparative financial status, but that it will become obvious merely

due to the respective identities of the parties. The court nonetheless agrees that any argument that the merits of the case should be impacted by any party's financial status is improper. The motion is **GRANTED** to the extent that plaintiffs are prohibited from referencing or offering evidence in support of their relative poverty.

18. Golden Rule arguments

Defendants request that the court bar Golden Rule arguments. Plaintiffs acknowledge such arguments are improper but imply that the request is overbroad and ask that defendants reserve their request to contemporaneous objections, so that the court can evaluate any offending arguments in context. The Fifth Circuit has held that Golden Rule arguments are "improper only in relation to damages" and not "when urged on the issue of ultimate liability." *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983). Accordingly, the motion is **GRANTED** only as to arguments that ask the jury to place itself in plaintiffs' shoes on the question of damages.

19. Conscience of the community

Defendants also ask that the court bar "conscience of the community" arguments. Plaintiffs again state that they have no intention of presenting improper argument but ask that the court avoid an overbroad ruling and that defendants reserve any objections to specific statements that might arise at trial. The Fifth Circuit has described conscience of the community arguments as unfairly prejudicial, but acknowledged that identifying them is context-specific. *Baxter v. Anderson*, 277 F.Supp.3d 860, 865 (M.D. La. 2017) (citing *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986)).

Accordingly, the motion is **DENIED** in this respect and defendants may lodge contemporaneous objections at trial if they identify improper argument or remarks.

20. **Insurance policies or coverage**

Defendants request that the court prohibit any reference to insurance policies or coverage that they might have in place. Plaintiffs acknowledge that the existence of liability insurance is inadmissible under Federal Rule of Evidence 411 to show that a person acted negligently or wrongfully, but maintain that it may be admitted for some other purpose, such as showing bias, agency, ownership, or control. They also note the overbreadth of defendants' request, extending to terms like "adjuster" or "claims agent," when the case involves a motor vehicle accident and individuals acting in these capacities might have relevant evidence. The court agrees that the request is overbroad and it is therefore **DENIED**. Plaintiffs are aware of their obligations regarding Federal Rule of Evidence 411; defendants may lodge a contemporaneous objection if they believe a line has been crossed.

21. **Requests to produce evidence**

Defendants ask that the court bar any requests by plaintiffs in front of the jury "that defense counsel or employees of Defendants produce any document, statement, pleading, photograph, or any tangible things contained in, or claimed to be contained in, Defendants' files." Doc. 181, att. 1, p. 22. Plaintiffs maintain that the motion is vague and unnecessary. The court agrees; both sides are aware of their obligations and any improper theatrics will be dealt with at trial. The motion is therefore **DENIED** in this regard.

22. **Efforts to exclude or limit evidence**

Defendants request that the court exclude any testimony, suggestion, or argument by plaintiffs, their counsel, or witnesses that they would like to bring more evidence to the jury's attention but are prohibited from doing so by court rulings. Plaintiffs do not object, provided that this restraint applies to both sides. Accordingly, the motion is **GRANTED** in this regard and applies to both defendants and plaintiffs.

23. **Other representation by counsel**

Defendants request that the court exclude any testimony or suggestion that defense counsel regularly represent CMA, SHG, other corporations, defendants, or manufacturers in lawsuits. Plaintiffs do not object, as long as the restriction applies to both sides. The court agrees that any such argument is irrelevant and unfairly prejudicial. The motion is **GRANTED** in this regard and both sides are prohibited from referencing other representation undertaken by opposing counsel.

24. **Size of law firm**

Defendants request that the court prohibit reference to the number of attorneys representing them or the size of their firm. Plaintiffs do not object, so long as the ruling is enforced against both sides. The court again agrees that the topic is irrelevant and unfairly prejudicial. Accordingly, the motion is **GRANTED** in this regard and both sides are prohibited from referencing the number of attorneys representing the other side or the size of their respective law firms.

### 25. Cause of Mr. Smith's death

Defendants move to exclude evidence of Mr. Smith's cause of death, arguing that it is irrelevant since there is presently no wrongful death claim before the court. Plaintiffs filed a motion for leave to amend and assert a wrongful death claim in November 2024, three years after Mr. Smith's death. Doc. 117. The magistrate judge has recommended that the motion be denied as futile because any such claim is prescribed. Doc. 184. Plaintiffs have filed an objection to that motion. Doc. 212.

The original complaint seeks recovery for Mr. Smith's mental and physical pain and suffering as well as his physical disability and impairment, allegedly caused by injuries sustained in the subject accident. Doc. 1, att. 2, p. 6. With the substitution of Mr. Smith's survivors under Federal Rule of Civil Procedure 25 and Louisiana Civil Code article 2315.1, the matter became a survival action. A survival action only permits recovery "for the damages suffered by the victim from the time of injury to the moment of death." *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993). Thus, "[t]he elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by the victim up to the moment of death." *White v. Entergy Gulf States La., LLC*, 167 So.3d 764, 770 (La. Ct. App. 1st Cir. 2014). If the court adopts the magistrate judge's report and recommendation, then the jury will be reminded that they are not to consider damages on the part of the individual plaintiffs or for any losses caused by/subsequent to Mr. Smith's death.[2] But if, as plaintiffs posit, Mr. Smith's head injury did cause his decline and eventual

---

[2] Plaintiffs also assert that Mr. Smith's cause of death "is still relevant to **future** damages recoverable under a survival claim such as Billy Smith's loss of earning capacity" and that they must prove that the accident contributed to Mr. Smith's death in order to recover under this category. Doc. 200, p. 26 (emphasis added). Any claim for lost wages and

death, then his own suffering was magnified. Accordingly, his cause of death is relevant to the question of damages even without a wrongful death claim. The motion in limine is **DENIED** in this regard.

26. **Damages limited to three years**

Defendants request that the court preclude plaintiffs and their witnesses from arguing, inferring, or otherwise claiming that they may recover damages for any losses that occurred after Mr. Smith's death in September 2021, three years after the subject accident. Plaintiffs oppose the request and assert that Mr. Smith's "loss of earning capacity is a future damage recoverable under his survival claim." Doc. 200, p. 27.

As the court noted *supra*, note 2, any lost earning capacity claim terminated with Mr. Smith's death under a survival action. If the court adopts the magistrate judge's report and recommendation, recoverable damages in this matter will be limited to the period between the accident and his death. The motion is **DEFERRED** in this regard, pending a ruling on the report and recommendation.

27. **Statements on the law of the case**

Defendants ask that the court suggestion by plaintiffs "suggesting the law of the case or that any legal issue has already been decided by the Court." Doc. 181, att. 1, p. 25. Plaintiffs agree that it is the court's role to instruct the jury on the law of the case. The motion is therefore **GRANTED** in this regard and applies to both sides.

---

earning capacity past the time of Mr. Smith's death is extinguished with his death under a survival action, regardless of his cause of death. Mr. Smith's cause of death is only relevant to such a claim to the extent it bears on his health in the time leading up to his death.

28. **Statements that "preponderance" means 51 percent of the evidence**

Finally, defendants request that the court bar plaintiffs from eliciting testimony or arguing that a preponderance of the evidence means 51 percent of the evidence. Plaintiffs respond that they intend to follow this court's instructions and the Fifth Circuit pattern jury charge on the burden of proof. Accordingly, the motion is **GRANTED** in this regard.

### III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendants' omnibus Motion in Limine [doc. 181] be **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**.

**THUS DONE AND SIGNED** in Chambers on the 1st day of July, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**