UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BILLY SMITH** | **CASE NO. 2:19-CV-01111** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHINA MANUFACTURERS ALLIANCE L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM ORDER

Before the court is a *Daubert* Motion to Exclude the Testimony of Defendants' Expert Franklin Peretti, filed by plaintiffs. Doc. 174. Defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG") oppose the motion. Doc. 193.

### I.
#### BACKGROUND

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 dump truck while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires, manufactured by SHG and distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and SHG under Louisiana Civil Code article 2315 based on their negligent design,

manufacture, and distribution of the tires. *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Smith passed away on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

Defendants seek to introduce testimony from forensic pathologist Dr. Franklin Peretti on Mr. Smith's cause of death.[1] Plaintiffs now move to exclude that testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 174. Defendants oppose the motion. Doc. 193.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles

---

[1] Defendants maintain that Mr. Smith's cause of death is irrelevant if the court adopts the magistrate judge's report and recommendation and excludes the wrongful death claims. In ruling on the defense's omnibus motion in limine [doc. 219], however, the court determined that Mr. Smith's cause of death was also relevant to the pending survival action—if, as plaintiffs contend, Mr. Smith died due to his head injury sustained in the subject accident, then his suffering up until the time of his death was likely magnified.

and methodology on which the testimony is based.[2] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Dr. Peretti conducted the only autopsy on Mr. Smith. *See* doc. 193, att. 1. Plaintiffs do not challenge his qualifications but maintain that he lacked a sufficient factual basis for his opinions because he did not have Mr. Smith's complete medical records when he conducted the autopsy.

---

[2] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

Dr. Peretti is a forensic pathologist with over 30 years of experience. Doc. 193, att. 2. He has served as associate or assistant medical examiner for the Arkansas State Crime Laboratory, the Baltimore Office of the Chief Medical Examiner, and the Rhode Island Medical Examiner's Office. *Id.* He conducted an autopsy on Mr. Smith on September 10, 2021, less than a week after his death, and summarized his findings:

> I.  Status-post remote craniocerebral trauma:
>    A. Cortical contusions, remote.
>
> II. Hypertensive arteriosclerotic cardiovascular disease:
>    A. Cardiomegaly with left ventricular hypertrophy, 500 grams.
>    B. Atherosclerosis of coronary arteries.
>    C. Nephrosclerosis.
>
> III. Fatty, fibrotic liver.

Doc. 193, att. 1, p. 1. He also noted evidence of a "remote injury" from the 6-inch surgical scar on Mr. Smith's head, observing no underlying skull fracture but finding "a remote yellow-brown contusion involving the right frontal lobe of the brain, immediately adjacent to the longitudinal fissure" and "multiple small, yellow-brown cortical contusions" in the left frontal white matter. *Id.* at 3. Based on the forensic evidence, however, he opined that "63-year-old, white male, Billy Joe Smith, died of hypertensive arteriosclerotic cardiovascular disease." *Id.* at 2.

Dr. Peretti admitted at his deposition that he was not given any medical records or history at the time of the autopsy. Doc. 174, att. 2, pp. 10–11. Since that time, and before his deposition, he reviewed the death certificate provided by Calcasieu Parish coroner Dr. Terry Welke (who performed a limited post-mortem examination in lieu of an autopsy), the report of plaintiffs' treating neurologist Dr. David Weir (who did not examine Mr. Smith

after his death), and the report and deposition of plaintiffs' consulting neurologist, Dr. Ian Hood (who never examined Mr. Smith). *Id.*; doc. 193, att. 2, pp. 66–67; *see* doc. 44, att. 1 (death certificate); doc. 193, att. 4 (Weir report).[3] He admitted that all of the information with the exception of Dr. Hood's report was only provided to him on the morning of his deposition. Doc. 174, att. 2, p. 7. He also admitted that it was "sort of an unfair autopsy" because he lacked any information at the time, including the death certificate. *Id.* at 14. Because of the lack of medical history, he did not fix the brain in formalin and perform a neuropathic examination. *Id.* at 49. He advised, however, that he was not adverse to changing his opinion on a cause of death if provided with sufficient evidence. Doc. 193, att. 3, pp. 66–67. He found no basis in the reports provided to do so. *Id.*

      Drs. Hood, Weir, and Welke came to a different conclusion on Mr. Smith's cause of death, and will be able to defend that conclusion at trial based on their familiarity with the alleged progression of Mr. Smith's neurological injury if properly qualified. But Dr. Peretti is a qualified forensic pathologist and performed the only autopsy in this matter. He examined Mr. Smith's brain and, even after reviewing the relevant medical opinions, found no basis to change his conclusion. Plaintiffs may cross-examine him as to the sufficiency of his autopsy and what findings he might have missed without a neuropathic examination. They fail to show, however, that his conclusions are so unfounded as to provide no aid to the jury under Federal Rule of Evidence 702.

---

[3] The parties have provided only a brief excerpt of Dr. Hood's deposition and his report is not in the record. The *Daubert* motion concerning him is limited to the relevance of opinions on Mr. Smith's cause of death. *See* doc. 182. But plaintiffs do not contest defendants' assertion that Dr. Hood never examined Mr. Smith, and the court therefore accepts it as true for the purposes of this motion.

## III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that plaintiffs' *Daubert* Motion [doc. 174] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of July, 2025.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE