UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BILLY SMITH** | **CASE NO. 2:19-CV-01111** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHINA MANUFACTURERS ALLIANCE L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM ORDER

Before the court is a *Daubert* Motion to Exclude the Testimony of Plaintiffs' Expert Ian Hood, filed by defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG"). Doc. 182. Plaintiffs oppose the motion. Doc. 194.

I.
BACKGROUND

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 dump truck while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires, manufactured by SHG and distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and SHG under Louisiana Civil Code article 2315 based on their negligent design,

manufacture, and distribution of the tires. *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Smith passed away on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

Plaintiffs filed a motion for leave to amend and assert a wrongful death claim in November 2024, three years after Mr. Smith's death. Doc. 117. The magistrate judge has recommended that the motion be denied as futile because any such claim is prescribed. Doc. 184. Plaintiffs have filed an objection to that recommendation, which is awaiting response from defendants and review by the undersigned. Doc. 212.

Plaintiffs seek to introduce testimony from forensic pathologist Dr. Ian Hood on the cause of Mr. Smith's death. Defendants now move to exclude that testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because his opinions are not pertinent to any claims presently before the court. Doc. 182. Plaintiffs oppose the motion. Doc. 194.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must

consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Dr. Hood opines that Mr. Smith's death was caused by sequelae of the head injury he sustained in the subject accident, almost three years prior. Defendants make no challenge

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

to his qualifications or the manner in which he arrived at this conclusion. Instead, they argue that the opinions are not relevant to any claim presently before the court and must therefore be excluded under Federal Rule of Evidence 702.

The original complaint seeks recovery for, *inter alia*, Mr. Smith's mental and physical pain and suffering, physical disability and impairment, and lost wages and earning capacity allegedly caused by injuries sustained in the subject accident. Doc. 1, att. 2, p. 6. With the substitution of Mr. Smith's survivors under Federal Rule of Civil Procedure 25 and Louisiana Civil Code article 2315.1, the matter became a survival action. A survival action only permits recovery "for the damages suffered by the victim from the time of injury to the moment of death." *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993). Thus, "[t]he elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by the victim up to the moment of death." *White v. Entergy Gulf States La., LLC*, 167 So.3d 764, 770 (La. Ct. App. 1st Cir. 2014).

Plaintiffs assert that Mr. Smith's cause of death is relevant to his loss of earning capacity claim under the survival action, and that they will "have the burden to prove that the Subject Tire's failure caused/contributed to Billy Smith's death . . . which requires medical expert testimony connecting the causal link between Billy Smith's death and his orthopedic injuries and traumatic brain injury sustained as a result of the Subject Incident." Doc. 194, p. 1. Any claim for lost earning capacity past the time of Mr. Smith's death is extinguished with his death under a survival action, regardless of the cause. If the court accepts the magistrate judge's report and recommendation, damages will be limited to what Mr. Smith himself could have collected for what he suffered in the period between the

accident and his death. But if, as plaintiffs posit, Mr. Smith's head injury did cause his decline and eventual death, then his own suffering was magnified. Accordingly, his cause of death is relevant to the question of damages even without a wrongful death claim.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendants' *Daubert* Motion [doc. 182] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of July, 2025.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**