UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BILLY SMITH**                                                            CASE NO. 2:19-CV-01111

**VERSUS**                                                                  JUDGE JAMES D. CAIN, JR.

**CHINA MANUFACTURERS ALLIANCE L L C ET AL**      MAGISTRATE JUDGE LEBLANC

# MEMORANDUM ORDER

Before the court is a *Daubert* Motion to Exclude the Testimony of Defendants' Expert Richard Carr, filed by plaintiffs. Doc. 187. Defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG") oppose the motion. Doc. 220.

## I.
### BACKGROUND

This suit arises from a motor vehicle accident that occurred on September 7, 2018, in Vinton, Louisiana. Doc. 1, att. 2. Plaintiffs allege as follows: On that date, Billy Smith was operating a 2016 Kenworth T880 dump truck while traveling westbound on Interstate 10. *Id.* at ¶ 3. The vehicle was outfitted with Chinese-manufactured steel belt radial truck tires, manufactured by SHG and distributed by CMA under the trade name "Double Coin tires." *Id.* at ¶¶ 6–7. The accident occurred when Smith's tires suffered a catastrophic tread/belt separation, overturning the vehicle and severely injuring Smith. *Id.* at ¶¶ 4, 18.

Smith filed suit in state court on July 11, 2019, raising claims against CMA and SHG under Louisiana Civil Code article 2315 based on their negligent design,

manufacture, and distribution of the tires.[1] *Id.* at ¶¶ 6–17. CMA removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Smith passed away on September 4, 2021, and his surviving spouse and four adult children were substituted as plaintiffs. Doc. 44, att. 1; doc. 65.

Defendants seek to introduce testimony from Dr. Richard Carr as an expert in the fields of trucking industry maintenance practices and trucking fleet and driver management standards. Plaintiffs now move to exclude that testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 187. Defendants oppose the motion. Doc. 220.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must

---

[1] The complaint does not explicitly invoke the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, but appears to limit its claims to that statute's exclusive theories of recovery. The LPLA's exclusivity for claims against the manufacturer of an allegedly defective product is "well-established" under Louisiana law. *Rivers v. Remington Arms Co.*, 2018 WL 746392, at *2 (E.D. La. Feb. 7, 2018) (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997)). The court has already established through its summary judgment ruling that plaintiffs' claims arise under the LPLA, as they seek to hold SHG liable as manufacturer and CMA liable as its alter ego or exercising sufficient control and influence over SHG, as set forth under La. R.S. 9:2800.53(1)(b) and (d). Doc. 160; *see, e.g.*, *Tuminello v. ABC Ins. Co.*, 381 So.3d 320, 333 (La. Ct. App. 3d Cir. 2024) (LPLA was plaintiff's exclusive remedy against domestic distributor of foreign-manufactured product, where distributor qualified as manufacturer under the statute).

consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[2] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

---

[2] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

B. **Application**

Dr. Carr offers opinions regarding alleged deficiencies in Mr. Smith's licensure and driving conduct as well as in the maintenance of the vehicle and other practices by his employer, Kent & Smith Holdings, LLC. He has decades of experience in the transportation industry, including managing fleets of thousands of vehicles at multiple large national corporations. Doc. 220, att. 3, pp. 2–3. He holds a Ph.D in Safety Engineering and has served as an expert witness in several cases over the last four years. *Id.* at 15–17. Plaintiffs do not challenge his qualifications but instead maintain that he lacks an adequate basis for the following opinions: (1) Billy Smith was not properly licensed at the time of the incident and failed to report vibrations in the steering wheel; (2) Kent & Smith lacked an adequate preventative maintenance program given their operational conditions; (3) Kent & Smith improperly allowed a plugged tire to remain in use; (4) Kent & Smith failed to retain and secure documentation post-accident relating to the subject vehicle and Mr. Smith; and (5) Kent & Smith's alleged carrier violations four years after the accident are evidence of a culture of committing carrier violations around the time of the accident.

1. **Mr. Smith's licensure and failure to report steering wheel vibrations**

In his deposition Dr. Carr opined that he "[did] not believe Mr. Smith had a valid CDL driver's license at the time of this accident" because the copy contained in his Kent & Smith driver record had an expiration date of September 5, 2018, with no indication of renewal. Doc. 187, att. 2, pp. 144–45. Dr. Carr admitted, however, that he could not say one way or another whether the license had been renewed and that he had made no independent attempt to verify renewal. *Id.* at 148–49. In response, plaintiffs show that a

Class A CDL was issued to Mr. Smith on June 18, 2018, with expiration date of September 5, 2024. Doc. 187, att. 3.

Defendants maintain that Dr. Carr nonetheless had an adequate basis to reach his conclusion on Mr. Smith's license status, based on the contents of his Kent & Smith driver's record. Even if Mr. Smith was properly licensed at the time of the accident, the fact that his employer's records indicated he was not may fall short of the standard of care. Further, they complain that the valid driver's license is not Bates-stamped and was never produced in discovery.[3] The court agrees that the record provides an adequate basis for Dr. Carr to opine that there was no evidence in Kent & Smith's files at the time of the accident that Billy Smith was properly licensed.

Dr. Carr also opined:

> As reported by [defense expert] Michael Grima, the left front steering tire in the condition reported by Mr. Grima would have produced wobble and/or vibrations in the steering system which the driver would have felt. A well-trained and safety-conscious driver would have reported such vibrations to the maintenance department via his daily pre-trip and/or post-trip vehicle inspection reports. However, no such reports or maintenance work orders in response to such write-ups have been produced.

Doc. 220, att. 3, p. 6. Plaintiffs maintain that this opinion is based on improper assumption and speculation, namely that Dr. Carr assumes based on Mr. Grima's report that the steering wheel was vibrating and then further assumes from the lack of documentation that Mr. Smith felt these vibrations and failed to report them.

---

[3] Plaintiffs maintain that this is false and show that the current license was also received by defendants in their subpoena response from the Louisiana Office of Motor Vehicles. *See* doc. 232, att. 1. The subpoena response was received on December 30, 2024, three weeks after Dr. Carr submitted his report to defendants on December 9, 2024. *See* doc. 220, att. 3 (Carr Report).

An expert may rely on hearsay, including other expert reports, in forming his opinions. *Johnson v. Cox*, 2023 WL 4686435, at *5 (N.D. Tex. Jul. 21, 2023). "Still, 'Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions,' and '[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable,' which 'requires some objective, independent validation of the expert's methodology.'" *Id.* (quoting *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022)).

Although the court found that Grima lacked an adequate basis for his main conclusions and that his testimony would not be helpful for the jury, there is no basis to doubt his findings as to the effects that the tire's condition would have on the vehicle's operations. Likewise, Carr is adequately qualified to opine on not just if but how Mr. Smith should have reported this effect—by formally recording it in his inspection reports. As he noted, the purpose of the reports was to identify issues so that they could be repaired. Doc. 220, att. 4, pp. 159–60. He also pointed to Smith's apparent failure to record any issues with a low beam headlight that was later replaced, citing it as evidence of his failure to conduct adequate pre- or post-trip inspections. *Id.* at 161. Defendants show a sufficient basis for this opinion as well and plaintiffs' challenge goes to its weight rather than admissibility.

### 2. Inadequate preventative maintenance program

Dr. Carr also criticized Kent & Smith for failing to maintain an adequate preventative maintenance program. In his deposition he stated that the company should at

least have been aware that its vehicles' operating conditions, including operation around gravel pits, were "a very hard operation with respect to the tires" and maintained "a stepped-up tire program, if nothing else[.]" Doc. 187, att. 2, pp. 116, 127. He based his assumptions about the lack of adequate maintenance on the extent of wear and tear visible on the tires in photographs. *Id.* at 126. He could not cite an industry standard or state specifically how often Kent & Smith should have been inspecting the tires of its fleet, noting that he did not have a copy of the company's maintenance schedule. *Id.* at 127–28. Instead, he described his own experience operating a truck over gravel and how it necessitated replacement of the tires after only 50,000 miles. *Id.* Plaintiffs write this off as anecdotal, but experts are permitted to rely on their own relevant experience—including anecdotal cases. *E.g.*, *More, JC, Inc. v. Nutone Inc.*, 2007 WL 4754173, at *6 (W.D. Tex. Mar. 21, 2007). Carr's experience is highly relevant to the tires at issue and their working conditions, and he applied this lens when reviewing the photographs and maintenance records. Further, plaintiffs fail to provide any literature or studies contradicting his supposition. "It is the responsibility of opposing counsel to explore the factual basis for the opinion and thus, determine its reliability." *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012). Defendants have also shown a sufficient basis for this opinion; any further challenges to its basis must be reserved for cross-examination.

### 3. Allowing a plugged tire to remain in use

Dr. Carr noted that the right front steering tire had been plugged at least three times. Doc. 220, att. 3, p. 6. He cited a Kent & Smith 30(b)(6) deposition, wherein the deponent stated, "If there's any damage like that to a steer tire, there's no plug or patches," and thus

found that Kent & Smith violated its own policies by allowing the tire to remain in use. *Id.* Plaintiffs challenge this opinion because Dr. Carr never conducted a firsthand examination of the subject tire. But Dr. Carr reviewed photographs as well as the report of Mr. Grima, who found evidence of prior punctures. Mr. Grima's opinion aligns with that of defendants' tire failure expert Richard Grant, who provided his report on the same date as Dr. Carr. *See* doc. 192, att. 6. Plaintiffs' expert Troy Cottles also described a "puncture hole" and "[s]everal punctures and abrasions through tread and stone embedment throughout tread and carcass." Doc. 189, att. 2, p. 22.

As defendants note, "[e]very expert who has reviewed the tire has noted the numerous punctures on the tire, the stone drilling in the tire, and the wear of the tire. These facts are not in dispute."[4] Doc. 220, p. 11. Dr. Carr's extrapolation, based on testimony that plaintiffs fail to refute, that leaving such a tire on the steering axle violated Kent & Smith policy appears to be on solid footing. While plaintiffs maintain that the Kent & Smith policy does not necessarily establish the applicable standard of care, Dr. Carr has not ventured that far and may be cross-examined on the implications of his finding.

### 4. Failure to retain and secure documentation

In his deposition Dr. Carr pointed to deficiencies in Kent & Smith's record retention. Doc. 220, att. 4, pp. 145–47. Plaintiffs then pressed him as to whether any such failures contributed to the accident. Doc. 187, att. 2, pp. 153–56. Carr responded: "By them not providing documents, it did not contribute to the cause of the accident, but it might have

---

[4] As above, even if Mr. Grima is prohibited from testifying, the court finds no basis for doubting these basic findings or precluding any of defendants' other experts from relying on them.

inhibited or changed opinions, or aided in the scope and process of the ongoing litigation related and caused by the accident." *Id.* at 156–57.

Plaintiffs object that this opinion is irrelevant because, as Dr. Carr admitted, any record retention deficiencies did not cause the accident. But, as he explained, the absence of records could have inhibited investigation of the accident and a discovery of its contributing factors. Additionally, Dr. Carr is adequately qualified through his industry experience, including a stint as an investigator for the Federal Motor Carrier Safety Administration ("FMCSA"), to reach this opinion. *See* doc. 220, att. 3, p. 3 (Carr Report).

### 5. Kent & Smith culture

Finally, Dr. Carr asserted in his deposition that Kent & Smith had a "culture" of violating safety regulations based on its record from August 2022 to August 2024.[5] Doc. 187, att. 2, pp. 51–53. Plaintiffs thus move to exclude this opinion, arguing that testimony regarding Kent & Smith's subsequent violations is prohibited under Federal Rule of Evidence 404(b).

Defendants make no argument in support of the relevance of the subsequent violations. The court agrees that, even if they were offered for some purpose under Rule 404(b) other than showing Kent & Smith's bad character, they have no probative value because they occurred four to six years subsequent to the subject accident. The motion is therefore granted to the extent that Dr. Carr is prohibited from referencing these violations or opining on Kent & Smith's safety culture at the time of the accident based on its 2022–

---

[5] He had requested similar records from the time period preceding the accident through the Freedom of Information Act, but had not received a response as of his deposition in June 2025. Doc. 187, att. 2, pp. 54–55.

2024 record. This limitation does not prevent Dr. Carr from opining on Kent & Smith's compliance with DOT and FMCSA practices at the time of the accident based on other, more contemporaneous records.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that plaintiffs' *Daubert* Motion [doc. 187] be **GRANTED** as to references to Kent & Smith's 2022 to 2024 violation reports and opinions based thereon and **DENIED** in all other respects.

**THUS DONE AND SIGNED** in Chambers on the 16th day of July, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**