UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BILLY SMITH**                          **CASE NO. 2:19-CV-01111**

**VERSUS**                               **JUDGE JAMES D. CAIN, JR.**

**CHINA MANUFACTURERS ALLIANCE L L C ET AL**    **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM ORDER

Before the court are video deposition designations filed, respectively, by defendants China Manufacturers Alliance ("CMA") and Shanghai Huayi Group Corporation Ltd., f/k/a Double Coin Holdings Ltd. ("SHG") and by plaintiffs.[1] Doc. 228, att. 3; doc. 230, att. 6. The filings relate to depositions that the parties will play or read into the record at the upcoming jury trial in lieu of live testimony. Both groups have also filed objections and counter-designations. Docs. 240, 241. The court hereby **ACCEPTS** all designations and counter-designations for which there are no objections[2] and makes the following rulings on the objections:

---

[1] The parties have also filed designations and responses regarding non-video depositions. The court's scheduling order only addresses video depositions so that these may be edited in advance of trial. Objections regarding testimony in written transcripts will be deferred to trial.

[2] Plaintiffs have objected to one of defendants' counter-designations as "improper because it duplicates testimony already designated by Plaintiffs," referencing lines in the deposition of Mr. Su Hongbin that were designated by plaintiffs and counter-designated by defendants. Doc. 254, p. 3. There is no need for court ruling. The deposition will only be played once and in chronological order.

## Su Hongbin

Plaintiffs and defendants have both designated excerpts[3] from the depositions of SHG's 30(b)(6) representative, Su Hongbin. Defendants first object that the following calls for expert testimony that the witness is not qualified to provide:

> **Q:** And what I'm getting to is, can we agree that if an inner liner is too thin, that can result in premature aging of the tire, and that can result in a tire failure?

Doc. 249, att. 1, p. 85:12–15. Plaintiffs respond that Mr. Su was designated as SHG's corporate representative to testify regarding "the design and testing process for the subject tire and/or similar tires" and "SHG's studies, research, and/or other internal investigations into the cause of tread separation failures." The court agrees that the question is within the scope of this designation and does not necessarily require expert qualification, given Mr. Su's role within the company. The objection is overruled.

Defendants also object to plaintiffs' designation of page 99, lines 22 to 23, on the grounds that it does not contain a whole answer or complete question. Line 22 contains the end of a statement from defense counsel while line 23 is the first of a three-lined question from plaintiffs' counsel. *Id.* at p. 99:22–25. Plaintiffs withdraw this designation and state that page 99:23 instead serves as the starting point for the next designation, previously identified as "99:24–102:16." This objection therefore requires no ruling from the court.

---

[3] Certain portions of Mr. Su's deposition transcript were redacted, with the unredacted transcript filed under seal at the parties' agreement, because the questioning during those portions concerned "SHG manufacturing and technical standards that are proprietary information and trade secrets of SHG" and have been designated as confidential discovery material under the parties' protective order. The court has provided only the excerpts necessary to inform its ruling, which do not appear to contain any confidential or proprietary information.

Defendants next object to the following question as misstating the earlier testimony of a witness:

> **Q:** So it could have been a decrease in the thickness or even an increase in the thickness?
> **Mr. Bergman:** Objection. Misstates testimony.
> **The Witness:** (Through interpreter) I can only guess it is possible that could be the reason.

*Id.* at p. 100:21–25. Plaintiffs respond that the question does not misstate testimony but instead seeks clarification of Mr. Su's statement:

> **A:** The weight of the liner has to do with its width and weight and even its density. So I cannot tell from this what the reason was for the adjustment.

*Id.* at p. 100:18–20. Mr. Su offered this response to the question, "What would you do to increase or decrease the weight of the inner liner?" *Id.* at p. 100:10–11. He then continued to answer questions on possible reasons for adjustments of the liner weight. The court finds no mischaracterization and that any confusion is cured by Mr. Su's further testimony. The objection is overruled.

Finally, defendants object to the following question as irrelevant and prejudicial:

> **Q:** And we can agree that not one of those astronomically numbered tires have been recalled, right?

*Id.* at p. 135:14–16. Plaintiffs respond that the testimony is relevant to defendants' knowledge, product history, and post-sale conduct. In particular, they assert that the lack of any recalls despite producing so many tires "is probative of corporate awareness, risk assessment, and potential indifference to known hazards" and "bears on credibility and the reasonableness of SHG's safety protocols." Doc. 254, p. 2. The court agrees that the question and its implications are not unfairly prejudicial. Plaintiffs are entitled to develop

evidence and make reasonable inferences regarding defendants' safety protocols. The objection is overruled.

Defendants have also made designations of Mr. Su's deposition, and plaintiffs offer objections. All of these objections, however, are made on the basis that they omit material information in surrounding lines. The court accepts these as counter-designations[4] and the objections thus require no ruling.

### David Du

Plaintiffs have designated excerpts from the deposition of CMA's 30(b)(6) representative, David Du. Defendants object to the following on the basis of relevance:

> **Q:** By the way, I notice that you've got a Double Coin shirt on, right?
> **A:** Yes.

Doc. 243, att. 2, p. 13:19–21. Plaintiffs respond that the testimony is relevant because it clarifies the witness's visible association with Double Coin (trade name for SHG) during his deposition, even though he was offered as corporate representative for SHG. The court agrees that the affiliation is probative of the relationship between the entities and their respective witnesses. The objection is overruled.

Defendants also seek to exclude the following on the basis that Mr. Du is being asked to provide information outside of the areas that he has been asked to testify about:

> **A:** Double Coin has shareholder, is the major shareholder for CMA.

*Id.* at p. 17:23–24. Plaintiff withdraws this designation and there is no need for a court ruling. On the same basis, defendants object to the following:

---

[4] Defendants offer no objection to these expansions in their reply. *See* doc. 260.

> **Q:** Okay. And what does CMA do in order to meet that responsibility of ensuring the safety of tires that it sells to the United States consumers?
> **Mr. Bergman:** Objection. Beyond the scope. He wasn't designated for this topic.
> **Q (Mr. Ball):** You can answer.
> **Mr. Bergman:** If you know. You have no obligation to answer this because it's not what you were offered for.
> **Mr. Ball:** Just for the purposes of the record, I think that this is on the adjustment data—
> **The Witness:** Yeah.
> **Mr. Ball:** —that he's been designated for.
> **Q (Mr. Ball):** But go ahead.
> **A:** We expect the tire is good.

*Id.* at p. 19:7–21. Plaintiffs note that Mr. Du was designated to testify for CMA regarding "adjustment data, including the collection, assimilation, maintenance, and analysis of tire adjustment data of the subject tire and/or similar tires," and that this testimony addresses CMA's responsibility for tire safety. The court finds no basis to exclude the testimony and the objection is overruled.

Defendants object to the following on the grounds that Mr. Du is called on to offer testimony outside of the areas for which he was designated:

> **Q:** Right. And can we agree that sometimes a tire's belts can separate internally?

*Id.* at p. 72:14–15. Again, plaintiffs note that Mr. Du was designated to testify regarding adjustment data as well as the design and testing of the subject tire and/or similar tires. The court agrees and overrules the objection.

Plaintiffs also object to defendants' counter-designation of Mr. Du on the grounds that it is misleading and incomplete:

> **Q:** Okay. So it's your understanding, sitting here today, that if you have a separation in the belts, that that does not cause vibration?

**A:** Most not cause of separation.

*Id.* at p. 71:8–12. They request that the court include the following to provide necessary context and avoid a distorted presentation of the witness's testimony:

> **Q:** Yeah. That's—I'm not sure that's what I'm asking.
> My question to you is, do you have an understanding that a separation of a tire, separation inside a tire that has not come totally apart yet, do you understand what I'm saying?
> **A:** Uh-huh.
> **Q:** That that separation in the tire can cause a vibration?
> . . . .
> **THE WITNESS:** If the tires are really separated, that will cause the vibration. Yes.

*Id.* at pp. 71:13–25 and 72:3–4. Defendants objected to the final question on the grounds that it calls for expert testimony. But defendants cannot have it both ways if they seek to admit his testimony, supra, that a vibration would not be caused by a separation. The parties must reach an agreement on whether defendants' designation of that portion will be played, along with plaintiffs' counter-designation, or both designations are disallowed.

### Dr. Frank Peretti

Defendants have made designations from the deposition of forensic pathologist Dr. Frank Peretti, who performed an autopsy on the decedent and will offer expert testimony on his cause of death. Plaintiffs object to the following as leading:

> **Q:** Similarly, in the same vein, would you then say that because this gentleman had this heart disease and that's what he died of that his death was in no way related to the motor vehicle accident that caused his brain trauma back in September of 2018?
> **Ms. Sweetin:** Objection, leading.
> **A:** Correct.

Doc. 243, att. 8, p. 24:10–16.

> **Q:** So it's more probable than not that Billy Joe Smith, the death of Billy Joe Smith had nothing to do with his prior truck accident where he injured his brain?
> **Ms. Sweetin:** Objection, leading.
> **A:** Correct. You know, we do cases all the time in which, you know, people have traumatic injuries, you know, old traumatic injuries that die of other causes.

*Id.* at p. 24:17–24.

> **Q:** Is that most likely what led to the death and caused the death of Billy Joe Smith in your opinion?
> **Ms. Sweetin:** Objection, leading.
> **A:** I think he sustained a lethal cardiac arrythmia since there's no damage to the myocardium or the heart muscle.

*Id.* at p. 70:4–9. Defendants respond that leading objections may be used as necessary to develop a witness's testimony and that the trial judge has wide latitude in determining whether to permit such questions.

Under Federal Rule of Evidence 611(c), leading questions should not be used on direct examination "except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). The language of the rule is permissive, vesting "broad discretion in trial courts." *Huynh v. Quora, Inc.*, 508 F.Supp.3d 633, 643–644 (N.D. Cal. 2020) (quoting *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989)). All three excerpts contain leading questions, and the first impermissibly puts words into the mouth of the expert. The objection is sustained as to that exchange. As to the second and third excerpts, however, the court is mindful of the fact that defense has no opportunity to rephrase the question now. Further, Dr. Peretti offered more than a yes/no answer. The court will thus permit these questions as clarifying and overrule the objections on the final two excerpts.

Plaintiffs also object to the exhibits to the deposition, namely Dr. Peretti's curriculum vitae and his autopsy report, as hearsay and cumulative. Defendants argue that both documents are supported by sufficient guarantees of trustworthiness and admissible under Federal Rule of Evidence 807, even if technically hearsay. The court will address arguments on their admissibility at trial.

### Patrick Clay

Defendants have designated the entire deposition of Kent & Smith corporate representative Patrick Clay. Plaintiffs object to the following as speculation and not based on personal knowledge:

> **Q:** Okay. So this invoice date is 11/21/17. Would that suggest that this invoice probably relates to the tire that was put on this truck?
> **A:** Possibly, yes.

Doc. 243, att. 1, p. 68:19–23. Defendants respond that the testimony is not improper speculation and is made in reference to the offered exhibit. The court agrees; the objection is overruled.

Plaintiffs also object to the following as attorney testimony, misleading, and speculation:

> **Q:** Okay. And I will represent to you that the tire that has been presented for inspection in this case, as the front right tire, is an RLB900, just like it says on that invoice and maintenance sheet. For the front left tire, if there's no reference in any of these maintenance records to it being changed, other than this potential reference that we're looking at right now which says "steer tire" and there's no invoice from Southern Tire Mart indicating the front left tire on the vehicle was changed, would this represent the only tire change that Kent & Smith recorded for the front left tire during the two-year history of that truck?
> **Mr. Garrot:** Object to the form of the question. I though back in September of '17 there was a replacement of two steer tires.

Page 8 of 14

> **Mr. Bergman:** Okay.
> **Mr. Garrot:** I thought we talked about that.
> **Mr. Bergman:** It didn't say what kind of tires they were. But thank you for that correction, Counsel.
> **Mr. Ward:** What was the steer tire or both tires, what's the date on that?
> **Mr. Garrot:** It was September of '17, two steer tires were changed.

*Id.* at pp. 79:4–80:11. As defendants note, the question continues before the witness offers a response:

> **BY MR. BERGMAN**
> **Q:** And then, you know, two months later the front right tire was changed again. Do you know—is there any indication in the maintenance records why that tire would apparently have been changed twice in a two-month period?
> **A:** I don't have details on that.

*Id.* at p. 80:12–19. Plaintiffs have not objected to this portion. The court finds that the initial portion is necessary to provide context, and that any speculation or misrepresentation is offset by the interjections from opposing counsel. The objection is overruled.

Plaintiffs next object to a two-page exchange as irrelevant and containing attorney commentary. *Id.* at 96:2–98:9. Defendants offer no response. This designation contains no testimony from the witness and merely consists of an exchange between counsel over exhibits. The objection is sustained.

Plaintiffs object to the following as irrelevant and violating the court's prior ruling on collateral sources:

> **Q:** In discovery, Kent & Smith has produced its insurance policy with Zurich as the policy that was covering the vehicle at the time of the accident. Does Kent & Smith have any additional insurance besides that Zurich policy that covers the truck?
> **A:** Yes.
> **Q:** Okay. And was any kind of a claim made to that other insurance company?
> **A:** I think our excess carriers have been notified.

Page 9 of 14

*Id.* at p. 102:14–24. Defendants respond that the testimony is "[r]elevant to Intervenor's claim." Doc. 260, p. 4. But little explanation is needed for Zurich's presence as a worker's comp intervenor. This testimony is more concerned with excess carriers and may prove unfairly prejudicial by indicating that plaintiffs have already been made whole. The objection is therefore sustained.

Finally, plaintiffs object to five exhibits offered through Mr. Clay's deposition on the grounds of hearsay and relevance. The exhibits were not attached to the deposition transcript, however. The court will reserve all rulings on the admissibility of exhibits until trial.

### Monica Verduzco-Gutierrez

Defendants have designated portions of the deposition of Dr. Monica Verduzco-Gutierrez, who treated Billy Smith at TIRR Memorial Hermann. Plaintiffs object to the following as irrelevant, misstating testimony, and leading:

> **Q:** And that—so he had a preexisting problem or a prior problem with his rotator cuff on the left side before he was involved in this accident?
> **MR. KONERU:** Objection. Form.
> **BY MR. ROBERTS**
> **Q:** Is that correct?
> **A:** Sure. From what I had documented in my note, yes. Previous rotator cuff repair, because then I saw it also on his MRI of the left shoulder.
> **Q:** You saw it was a prior problem, in other words, an old issue for him?
> **MR. KONERU:** Objection. Form.
> **THE WITNESS:** I had—or at least they mentioned that there was a previous rotator cuff repair on there. Yes.

Doc. 243, att. 10, p. 23:10–24. Defendants respond that this testimony falls under the hearsay exception for statements made for medical diagnosis or treatment, because Dr.

Verduzco-Gutierrez was the decedent's treating physician. The court agrees and further finds that the questions were more clarifying than leading and at any rate minimally prejudicial. The objection is overruled as to this excerpt.

Plaintiffs next object to the following excerpt as violating the court's ruling on collateral sources:

> **Q:** Then you said you referred him for an MMI evaluation. Is that separate from an FCE evaluation?
> **A:** So FCE is functional capacity evaluation. And as—that is just like where he is physically. Would—would he be able to do if—in going back to work? What does he need to work on if he does—if they, you know, he does go back to work? And then M—MMI has to do with—it stands for maximum medical improvement. So it's in the context of workers' comp. And this is kind of—it's supposed to signify the point where there's an injured—where the injured worker's condition is considered pretty stable.

*Id.* at p. 37:4–16. Defendants agree to redact the single line, "So it's in the context of workers' comp." With the redaction, the excerpt does not violate the ruling on the admissibility of collateral sources. Accordingly, the objection is overruled.

### Kathleen Bechtold

Defendants have designated portions of the deposition of Dr. Kathleen Bechtold, decedent's treating neuropsychologist. Plaintiffs object to the following designation as irrelevant and violating the court's ruling on admissibility of collateral sources:

> **Q:** How does that relate to what was done with Mr. Smith? Were you in Houston back in 2018, 2019 when you were seeing him or were you commuting?
> **A:** No, I lived in the Houston area during that time period and the patient resided in an apartment that was given to him or provided for him by the workmen's compensation Paradigm company for the time period of his recovery.

Doc. 243, p. 6:1–8. Defendants respond that only the portion referencing worker's comp should be deleted. The court agrees; provided everything after "apartment" is deleted then the testimony does not violate the court's ruling. The objection is overruled.

On the same basis plaintiffs object to the following designations:

> **Q:** Yes, ma'am. And how did you get involved in the care of Mr. Smith back then?
> **A:** I was one of the consultants that Paradigm regularly consulted with regarding individuals who had incurred traumatic brain injury and so was part of the treatment team for Mr. Smith.
> . . . .
> **Q:** Okay. He was still getting ready to be discharged to an apartment in that area, correct?
> **A:** Yes, that was provided by Paradigm, that's correct.

*Id.* at pp. 6:18–7:1, 23:19–22. Defendants respond that worker's comp is not mentioned and the testimony should be allowed. But the court is mindful that a juror, through personal or professional experience, may be familiar with what Dr. Bechthold goes on to describe as "a national catastrophic injury workmen's comp carrier." *Id.* at 7:3–4. Other designations make it clear that Dr. Bechthold was involved in decedent's care as a treating provider; the reference to Paradigm might cause the jury to impermissibly consider collateral sources. Accordingly, the objections are sustained.

Plaintiffs also object to designations (7:2–4 and 7:5–8), in which Dr. Bechthold provides more information on Paradigm and her retention on its behalf, on the same grounds. They then object to a leading question (27:18–28:2), to which an objection was made at the deposition. Defendants agree to the redaction of this testimony. Therefore no ruling is required from the court.

Plaintiffs next object to the following as irrelevant and violating the court's ruling on collateral sources:

> **Q:** Under the major findings category, you note some conversations you had at this time about whether or not Mr. Smith was going to retire or go back to work. Could you share with us what your notes indicate was discussed?
> **A:** *So I met, joining Mr. Smith and his, his wife was the Paradigm network case manager, Amy Stroud, to discuss the, the financial situation in terms of what, what occurs when a person receives workman compensation benefits after being injured during work-related duties.* So we discussed those to help the couple have a full understanding so they could make an informed decision about Mr. Smith returning to paid employment or retiring.

*Id.* at pp. 58:10–59:1. Defendants agree to redact the portion italicized above. The remaining testimony does not mention worker's compensation and is relevant to claims based on the decedent's alleged disability. The objection is overruled.

Finally, plaintiffs object to the following as omitting material information:

> **Q:** There was some discussion there between you and the two of them about whether or not he was going to be able to return to work. Can you kind of summarize what was discussed and what the apparent outcome was by the Smiths as to what they were going to do?
> **A:** It appears that we were discussing the first step to vocational reentry which is to engage in a volunteer experience, right? It's a way to practice the management aspects of being in a job on a limited basis without having to do a specific wage earning duties. And so it appears that he understood the reasoning for doing volunteer work, this is not uncommon for many individuals to say I don't want to volunteer or how is this going to help me, and so I was providing education on how does volunteering have the aspects of an activity that is akin to the basics of being, having an employed position, and allows him to experience that as well as to see how he does with enduring
> . . . .

*Id.* at pp. 60:12–61:9. Plaintiffs note that the excerpt does not contain the rest of the witness's answer. Dr. Bechthold continued: ". . . otherwise managing his fatigue ability and also the benefits for that, of him having to think through, respond to others and, which is a

form of exercise for the brain, shall I say." *Id.* at p. 61:9–13. The court will treat this as a counter-designation and finds that, with this inclusion, the designation is admissible.

**THUS DONE AND SIGNED** in Chambers on the 25th day of July, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE